FILED
Scott L. Poff, Clerk
United States District Court

By James Burrell at 12:27 pm, Jul 28, 2017

## IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF GEORGIA SAVANNAH DIVISION

DOUGLAS ECHOLS,    )
          )
  Plaintiff,    )
          )
v.          )  CASE NO. CV408-023
          )
SPENCER LAWTON, in his  )
individual capacity,   )
          )
  Defendant.    )
          )

## O R D E R

Before the Court is Defendant's Motion to Dismiss Amended Complaint by Special Appearance (Doc. 29.) For the following reasons, Defendant's motion is **GRANTED**. As a result, Plaintiff's complaint is **DISMISSED**. The Clerk of Court is **DIRECTED** to close this case.

### BACKGROUND

This case revolves around Plaintiff Douglas Echols's exoneration for rape and kidnapping convictions.[1] In 1987, Plaintiff was convicted in the Superior Court of Chatham County of those two offenses and sentenced to a fifteen-year term of imprisonment. (Doc. 26, ¶¶ 8, 13.) While

---

[1] At this stage of the litigation, the Court must accept the allegations in Plaintiff's amended complaint as true and draw all reasonable inferences in his favor. See Chaparro v. Carnival Corp., 693 F.3d 1333, 1335 (11th Cir. 2012). The Court has related the facts accordingly, but expresses no opinion as to what a fully developed record would actually show.

imprisoned, Plaintiff endured numerous attacks because he had been convicted of a sex offense. (Id. ¶¶ 14-16.) Plaintiff was also dishonorably discharged from the United States Army. (Id. ¶ 17.) After serving five years in prison, Plaintiff was released on parole, monitored using an ankle bracelet, and required to register as a sex offender. (Id. ¶¶ 19-21.) In an effort to secure meaningful employment, Plaintiff violated his parole by traveling outside the Savannah area. (Id. ¶ 22.) Ultimately, Plaintiff served an additional two-years imprisonment based on that parole violation. (Id.)

In July 2001, a DNA test conducted by a third party determined that the semen obtained from the rape victim was not from Plaintiff. (Id. ¶ 23.) Plaintiff promptly presented this DNA evidence to the Chatham County District Attorney—Defendant Spencer Lawton. (Id. ¶ 24.) Defendant ordered additional DNA testing from the Georgia State Crime Lab, which confirmed that the semen collected in connection with the rape conviction was not from Plaintiff. (Id. ¶¶ 25-26.)

After hearing this new evidence, the Chatham County Superior Court concluded that it was "so material that it would likely result in a different outcome at trial." (Id. ¶ 27.) That court granted Plaintiff a new trial, and the

rape and kidnapping indictment against Plaintiff was dismissed. (Id. ¶¶ 27-28.) Ultimately, the State declined to proceed and entered a nolle prosequi with respect to those charges. (Id. ¶ 29.)

Based on the vacated convictions, a local member of the Georgia House of Representative presented House Resolution 96 to the Georgia General Assembly. (Id. ¶ 36.) That resolution sought to provide Plaintiff with $1,600,000 in compensation for losses related to his vacated convictions. (Id.) On two occasions, the Georgia Claims Advisory Board considered House Resolution 96 and unanimously determined that Plaintiff should receive compensation in an amount to be determined by the General Assembly. (Id. ¶¶ 38-39.)

Somewhere in this process, Defendant[2] sent Senator Jack Hill a February 8, 2006 letter regarding House Resolution 96. (Id. ¶ 40.) Defendant also emailed a memorandum to several other legislators. (Id. ¶ 41.) In these communications,[3] Defendant "claimed that Plaintiff's

---

[2] At that time, Defendant was still serving as the Chatham County District Attorney.
[3] The Court notes that neither party placed in the record copies of these communications. There is no general prohibition on placing items in the record at this early stage in the proceedings. Moreover, the Court may consider an extrinsic document when ruling on a motion to dismiss if that document is "(1) central to the plaintiff's claim, and

conviction and imprisonment for the crimes of rape and kidnapping were proper and fitting, even though Plaintiff's conviction had been vacated and a new trial had been granted." (Id. ¶ 45.) In addition, Defendant stated that Plaintiff remained under indictment, despite knowing that a nolle prosequi had been entered on those charges in October 2002. (Id. ¶¶ 46-47.) Defendant also opined that "the Georgia Legislature should not give Plaintiff the benefit of the presumption of innocence of the crimes of rape and kidnapping for which he had been imprisoned," and that "the vacation of Plaintiff's conviction[s] and grant of a new trial did not establish Plaintiff's innocence." (Id. ¶ 48.) Defendant "insisted that Plaintiff should not be compensated for his imprisonment for nearly sixteen years under [] conviction[s] that had been overturned, unless Plaintiff actually proved that he was innocent of the crimes of rape and kidnapping." (Id. ¶ 49.) According to Plaintiff, the General Assembly failed to pass House Resolution 96 "specifically due to Defendant Lawton's correspondence." (Id. ¶ 55.)

---

(2) its authenticity is not challenged." SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010) (citing Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005)). Regardless, neither Plaintiff nor Defendant thought to submit these documents. As a result, the Court pressed forward without the benefit of actually knowing what Defendant told members of the General Assembly.

Based on those events, Plaintiff filed a complaint in this court (Doc. 1), which he later amended (Doc. 26). In the amended complaint, Plaintiff brings three substantive counts against Defendant, all based on 42 U.S.C. § 1983. (Id. ¶¶ 56-66.) In Count One, Plaintiff alleges that Defendant violated § 1983 by denying Plaintiff's "constitutional rights to substantive and procedural due process, which rights are fundamental and guaranteed by the Fifth, Sixth and Fourteenth Amendments to the Constitution." (Id. ¶ 57.) Count Two argues that Defendant interfered and abridged "Plaintiff's constitutional rights to freedom of speech and right to petition the Government for redress of his grievances, which rights are fundamental and guaranteed by the First and Fourteenth Amendments." (Id. ¶ 61.) Finally, Count Three claims that Defendant "retaliate[d] against Plaintiff Douglas Echols for exercising his constitutional rights to freedom of speech and to petition the Government for redress of his grievances." (Id. ¶ 65.) Based on these claims, Plaintiff seeks both compensatory and punitive damages, as well as attorney fees and costs. (Id. ¶ 71.)

In his Motion to Dismiss, Defendant contends that Plaintiff's § 1983 claims lack merit because Plaintiff has failed to identify any specific right, privilege, or

immunity secured by the Constitution or laws of the United States that was denied by Defendant. (Doc. 29, Attach. 1 at 7.) In addition, Defendant argues that he is entitled to both prosecutorial (id. at 15-20) and qualified immunity (id. at 21-25).

In response, Plaintiff maintains that Defendant deprived Plaintiff of his constitutional rights by denying him substantive due process (Doc. 30 at 10-11); procedural due process (id. at 15-17); liberty, property, and the presumption of innocence (id. at 12-14); and the First Amendment right to petition and seek redress from the General Assembly (id. at 17-18). Also, Plaintiff argues that Defendant is not entitled to absolute prosecutorial immunity because the nolle prosequi entered on the rape and kidnapping charges ended the judicial process. (Id. at 3-8.) Finally, Plaintiff reasons that qualified immunity is inapplicable in this case because Defendant was not exercising his discretionary authority and deprived Plaintiff of clearly established constitutional rights. (Id. at 18-20.)

**ANALYSIS**

## I.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the

claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' " Id. (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " Id. (quoting Twombly, 550 U.S. at 557) (alteration in original).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Id. (quoting Twombly, 550 U.S. at 570). For a claim to have facial plausibility, the plaintiff must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1261 (11th Cir. 2009) (quotations omitted) (quoting Iqbal, 556 U.S. at 678). Plausibility does not require probability, "but it asks for more than a sheer possibility

that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " Id. (quoting Twombly, 550 U.S. at 557). Additionally, a complaint is sufficient only if it gives "fair notice of what the . . . claim is and the grounds upon which it rests." Sinaltrainal, 578 F.3d at 1268 (quotations omitted) (quoting Twombly, 550 U.S. at 555).

When the Court considers a motion to dismiss, it accepts the well-pleaded facts in the complaint as true. Sinaltrainal, 578 F.3d 1252 at 1260. However, this Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678. Moreover, "unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of [plaintiff's] allegations." Sinaltrainal, 578 F.3d at 1268 (citing Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005)). That is, "[t]he rule 'does not impose a probability requirement at the pleading stage,' but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Watts v. Fla. Int'l

_Univ._, 495 F.3d 1289, 1295-96 (11th Cir. 2007) (_quoting_ _Twombly_, 550 U.S. at 545).

II.  **42 U.S.C. § 1983**

Section 1983 does not include any provision that creates substantive rights, but provides only a remedy for "deprivations of federal statutory and constitutional rights." _Almand v. DeKalb Cty._, 103 F.3d 1510, 1512 (11th Cir. 1997) (_citing_ _Whiting v. Traylor_, 85 F.3d 581, 583 (11th Cir. 1996)). A requirement of any valid claim under § 1983 is the alleged deprivation of at least one of the plaintiff's federal constitutional or statutory rights by a defendant acting under color of state law.[4] _Id._ (_citing_ _Harvey v. Harvey_, 949 F.2d 1127, 1130 (11th Cir. 1992)). The specific facts peculiar to each case determine whether a plaintiff was deprived of such a right. _Singletary v. Vargas_, 804 F.3d 1174, 1180 (11th Cir. 2015) (_citing_ _McCullough v. Antolini_, 559 F.3d 1201, 1202 (11th Cir. 2009)). In this case, Plaintiff alleges that Defendant's actions deprived him of substantive due process (Doc. 30 at 10-14); procedural due process (_id._ at 15-17); and the

---

[4] This case does not involve the alleged deprivation of any federal statutory rights. In addition, the parties agree that Defendant was acting under color of state law at all times relevant to this case.

First Amendment rights to petition and seek redress from the General Assembly (id. at 17-18).

A.   Substantive Due Process

In his amended complaint, Plaintiff alleges that Defendant's actions denied Plaintiff his constitutional right to substantive due process. (Doc. 26 ¶ 57.) In his Motion to Dismiss, Defendant argues that Plaintiff has failed to identify any fundamental "right itself" that merits substantive due process protection." (Doc. 29, Attach. 1 at 10.) In response, Plaintiff claims that Defendant denied him substantive due process by depriving Plaintiff of liberty, property, and the presumption of innocence. (Doc. 30 at 12-15.) In addition, Plaintiff claims that Defendant's conduct is actionable under substantive due process because it "shocks the conscience." (Id. at 10-11.)

The notion of substantive due process works to "protect[] those rights that are fundamental, that is, rights that are implicit in the concept of ordered liberty." Kentner v. City of Sanibel, 750 F.3d 1274, 1279 (11th Cir. 2014) (quotations omitted) (quoting McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994)). Fundamental rights are those found in the Constitution, id. (citing DeKalb Stone, Inc. v. Cty. Of DeKalb, Ga., 106 F.3d 956,

959   n.6   (11th   Cir.   1997)),   and   a   small   class   of
unenumerated rights such as the penumbral right of privacy,
MiKinney, 20 F.3d at 1556 (citing Planned Parenthood v.
Casey,   505   U.S.   833,   ___   (1992)).   The   Supreme   Court
strongly   cautions   against   expanding   the   scope   of
substantive   due   process   because   of   the   inability   to
sufficiently narrow its parameters by providing reasonable
"guideposts   for   responsible   decisionmaking."   Collins   v.
City of Harker Heights, Tex., 503 U.S. 115, 125 (1992)
(citing Regents of Univ. of Mich. v. Ewing, 474 U.S. 214,
225-26 (1985)). At its heart, substantive due process is
"intended to prevent government 'from abusing [its] power,
or employing it as an instrument of oppression.' " Id. at
126   (quoting   DeShaney   v.   Winnebago   Cty.   Dept.   of   Soc.
Servs., 489 U.S. 189, 196 (1989)).

Moreover,   only   official   conduct   that   is   arbitrary   or
conscience-shocking will rise to the level of a substantive
due   process   violation.   Davis   v.   Carter,   555   F.3d   979,   982
(11th   Cir.   2009).   In   this   respect,   the   category   of
actionable   conduct   is   only   that   which   falls   at   the   far
"end[] of the tort law's spectrum of culpability." Cty. of
Sacramento   v.   Lewis,   523   U.S.   833,   848   (1998).   Conduct
shocks the conscience when it is most likely "intended to

injure [the plaintiff] in some way unjustifiable by any government interest." Id. at 849.

### 1. Liberty, Property, and the Presumption of Innocence

Plaintiff attempts to ground his substantive due process claim in the denial of his fundamental rights to liberty, property, and the presumption of innocence. (Doc. 30 at 12-15.) The complaint bases this claim on the notion that Defendant's comments were the direct cause of the General Assembly's failure to pass House Resolution 96, resulting in Plaintiff losing the $1,600,000 in compensation proposed in that resolution. However, Plaintiff fails to meaningfully articulate how Defendant's conduct deprived him of any specific interests previously recognized in federal court. Rather, Plaintiff seems to rest on the general idea that Defendant's false statements deprived him of two protected interests: (1) a property interest in the $1,600,000 he would have received absent Defendant's conduct and (2) Plaintiff's liberty interest in being presumed innocent of any crime.

In support of this argument, Plaintiff relies almost entirely on the Fifth Circuit Court of Appeal's decision in In re Smith, 656 F.2d 1101 (5th Cir. 1981). In that case, federal prosecutors identified the petitioner during the

factual summaries of guilty pleas in two separate cases, neither of which named him as a co-defendant, as the individual that accepted bribes while head of the Army and Air Force Exchange Service ("AAFES"). Id. at 1102-03. In addition, the petitioner was never indicted for any crime. Id. at 1104. When the petitioner attempted to retire, AAFES denied him additional retirement benefits under an Executive Management Program because he was identified in the plea colloquies as having received bribes. Id. at 1105. As a result, the petitioner sought a Writ of Mandamus directing the district court to strike his name from the plea colloquies. Id. The petitioner claimed that he was entitled to relief because the prosecutor's characterization of his involvement "so damaged his name, reputation, and economic interests that the government's actions [] violated his liberty and property interests contrary to the due process protection afforded by the Fifth Amendment of the United States Constitution." Id.

The Fifth Circuit agreed that the petitioner's name should be stricken from the records because its inclusion was "a violation of his liberty and property rights guaranteed by the Constitution." Id. at 1107. Also, including the petitioner's name denied him the presumption of innocence by implicating him "in criminal conduct

without affording him a forum for vindication." Id. The
Fifth Circuit reasoned that including the petitioner's name
was unnecessary, immaterial, and irrelevant to the plea
colloquies, and neither served a legitimate purpose nor
advanced the interest of the criminal justice system. Id.
at 1106-07.

The factual scenario in this case, however, is
markedly different. First, Defendant's statements were not
made in connection with any ongoing criminal proceeding,
but rather during the deliberative process regarding a
proposed house resolution that would have compensated
Plaintiff for the vacated convictions. The presumption of
innocence is a right enjoyed by individuals in the context
of criminal proceedings, not legislative debates. See,
e.g., Estelle v. Williams, 425 U.S. 501, 503 (1976) ("The
principle that there is a presumption of innocence in favor
of the accused is the undoubted law, axiomatic and
elementary, and its enforcement lies at the foundation of
the administration of our criminal law." (quotations
omitted and emphasis added) (quoting Coffin v. United
States, 156 U.S. 432, 453 (1895))); United States v. Sarda-
Villa, 760 F.2d 1232, 1240 (11th Cir. 1985) (Johnson, J.,
concurring) ("[T]he presumption of innocence [] must be
maintained until the verdict is issued in a criminal

proceeding."). In his response, Plaintiff has failed to identify any authority for the proposition that he was constitutionally entitled to a presumption of innocence under these circumstances. For its part, this Court has been similarly unsuccessful.

Second, the statements in <u>Smith</u> implicating the petitioner were made during criminal proceedings involving other individuals, but the petitioner was never actually indicted for those offenses. As a result, the petitioner was deprived of a forum that provided him an opportunity for vindication. In this case, however, Plaintiff was not deprived of any such forum because the information establishing that his convictions had been vacated, a new trial granted, and a <u>nolle prosequi</u> entered on the rape and kidnapping indictment were all part of the public record and readily available. While Plaintiff alleges that Defendant falsely stated that Plaintiff was under indictment for that charge, Plaintiff had already cleared his name and possessed all the documentation necessary to prove the inaccuracy of Defendant's statement. Moreover, there are no allegations Plaintiff was precluded from presenting this information to the General Assembly, or that its members were prevented from obtaining it from the public record. Therefore, it is difficult for this Court to

15

conclude that Plaintiff was falsely accused of committing a crime of which he would be unable to conclusively prove himself free from any legal guilt. Once again, neither Plaintiff nor this Court has located any authority indicating that Defendant's actions in this case worked to deprive him of an effective forum for vindication. Heeding the Supreme Court's warning against expanding the scope of substantive due process protections, this Court is unwilling to find that falsely informing state legislators contemplating a resolution that an individual remained under indictment violates the right to be presumed innocent.

Moreover, due process does not protect property interests in benefits to which individuals have little more than "an abstract need or desire," or merely "a unilateral expectation." Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 756 (2005) (quotations omitted) (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972)). Instead, the individual must "have a legitimate claim of entitlement to it." Id. (quotations omitted) (quoting Roth, 408 U.S. at 577). In this case, Plaintiff has grounded his § 1983 claims on the receipt of the $1,600,000. However, Plaintiff has failed to establish an entitlement to this benefit. Compensating Plaintiff for the period of time he

served in prison for vacated convictions might have been the right thing to do, but Plaintiff has not pointed this Court to any authority that would establish an entitlement to these funds. Absent this entitlement, Plaintiff lacks a property interest protected by the due process clause.

The problem with Plaintiff's claims is an inability to sufficiently articulate the specific fundamental right or protected interest that he was deprived. In this Court's exhaustive review, it was unable to locate any case sufficiently similar to the unique facts presented here, finding instead only persuasive authority that leads this Court to the conclusion that finding a substantive due process violation in this case would be an impermissible expansion of due process far beyond the availability of any meaningful guideposts. Absent these beacons, this Court is reluctant to stray from the narrow due process path previously laid out by federal courts. As a result, the Court concludes that Plaintiff has failed to state a valid § 1983 claim based on substantive due process.

2.    <u>Shocking the Conscience</u>

Plaintiff included in his brief a section entitled "Substantive due process-conduct that 'shocks the conscience.' " (Doc. 30 at 10.) However, that section contains no real argument to support the contention that

17

Defendant's conduct rises to that level. Instead, Plaintiff merely recounts the facts and concludes that Defendant's "conduct rises to the level of a constitutional violation." (Id. at 11.) This is a wholly conclusory statement that Plaintiff failed to support with any legal authority. As a result, Plaintiff has failed to establish that Defendant's conduct shocks the conscience as a matter of law.

Moreover, this Court concludes that Defendant's conduct does not pass the conscience shocking threshold. This category is reserved for only the most egregious conduct that is completely unrelated to any governmental interest. Lewis, 523 U.S. 833, 846 (1998). To be sure, Defendant's alleged comments, if true, are ill-advised, imprudent, and disheartening. The alleged conduct, if true, also falls far below the standard citizens should expect from their chief prosecutor and courts of law should expect from their officers. In this Court's opinion, however, Defendant's alleged conduct is insufficiently egregious to rise to the level necessary to find a due process violation, and Plaintiff has failed to offer any support suggesting otherwise.

B.   Procedural Due Process

In his response, Plaintiff also states that he was denied "other protections under the Fourteenth Amendment."

(Doc. 30 at 15.) It is unclear, but this appears to be some sort of procedural due process argument based on defamation.[5] Generally, "[t]o prevail [on a] procedural due process claim, [a plaintiff] must establish: (1) a constitutionally protected interest in life, liberty or property; (2) governmental deprivation of that interest; and (3) the constitutional inadequacy of procedures accompanying the deprivation. Bank of Jackson Cty. v. Cherry, 980 F.2d 1354, 1357 (11th Cir. 1992). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (internal quotation omitted).

In cases where a plaintiff alleges a procedural due process deprivation based upon defamation by a government actor, the Supreme Court has established a "stigma-plus" test. Paul v. Davis, 424 U.S. 693, 711-12 (1976). "To establish a liberty interest sufficient to implicate the fourteenth amendment safeguards, the individual must be not only stigmatized but also stigmatized in connection with a denial of a right or status previously recognized under state law." Smith ex rel. Smith v. Siegelman, 322 F.3d

---

[5] Plaintiff's complaint never mentions defamation, slander, or libel.

1290, 1296-97 (11th Cir. 2003). To avoid dismissal, a
plaintiff must allege "(1) a false statement (2) of a
stigmatizing nature (3) [deprivation of a tangible interest
in addition to the stigma (the "plus")] (4) made public
(5) by the government[ actor] (6) without a meaningful
opportunity for . . . name clearing." Buxton v. City of
Plant City, 871 F.2d 1037, 1042-43 (11th Cir. 1989).

In this circuit, the tangible interest must be more
than speculative. In the employment context, for example,
"a 'discharge or more' is required in order to satisfy the
'plus' element of the stigma-plus test. A transfer or a
missed promotion is not enough." Cannon v. City of W. Palm
Beach, 250 F.3d 1299, 1303 (11th Cir. 2001). "[T]he
deleterious effects that flow directly from a sullied
reputation, such as the adverse impact on job prospects,
are normally insufficient." Siegelman, 322 F.3d at
1298 (11th Cir. 2003). The tangible interest must be a
"right or status [that] has been previously recognized and
protected under state law." Behrens v. Regier, 422 F.3d
1255, 1261 (11th Cir. 2005).

In this case, Plaintiff alleges that Defendant made
stigmatizing misrepresentations about him in a letter to
the General Assembly and that these statements prevented
him from receiving compensation for being imprisoned on

20

convictions that were later vacated. The Court concludes that Plaintiff has not alleged a sufficient tangible interest to establish a procedural due process claim. In this context, an individual cannot have a "tangible interest" in matters pending before a legislative body. See Behrens, 422 F.3d at 1261 (requiring plaintiff to "show that his alleged right or status has been previously recognized and protected under state law" (citing Paul, 424 U.S. at 710-11)). Uncertain prospects in a proposed House Resolution do not rise to the standard required by the Eleventh Circuit to establish a tangible interest. Accordingly, Plaintiff has failed to state a § 1983 claim based on the denial of procedural due process.

C.   Denial of First Amendment Rights

In Count Two, Plaintiff alleges that Defendant's misrepresentations interfered with his constitutional rights to freedom of speech and his right to petition the Government for redress of his grievances. (Doc. 26 ¶¶ 61-62.) However, Plaintiff's amended complaint fails to allege that his speech was actually restricted in any way. Rather, Plaintiff's factual allegations establish that he did exercise both his freedom of speech and right to petition by seeking compensation for the time he was incarcerated. Those endeavors were simply unsuccessful. Even if House

Resolution 96 failed due only to Defendant's conduct, those actions did not work to deprive him of his First Amendment rights. Accordingly, the Court finds that the amended complaint fails to state a § 1983 claim based on the denial of Plaintiff's First Amendment rights to freedom of speech and to petition the Government.

In Count Three, Plaintiff alleges that Defendant retaliated against Plaintiff for exercising his constitutional rights to freedom of speech and to petition the government for redress of his grievances. (Id. ¶ 65.) Essentially, Plaintiff alleges that Defendant's misrepresentations to the General Assembly were in retaliation for his successful challenge of his criminal conviction and subsequent efforts to obtain compensation. The First Amendment prohibits the government from retaliating against individuals for engaging in protected speech. See, e.g., Bryson v. City of Waycross, 888 F.2d 1562, 1565 (11th Cir. 1989). To properly state a claim that a plaintiff was retaliated against for exercising his First Amendment rights, the complaint must allege that (1) the plaintiff engaged in protected activity; (2) the defendant's actions adversely affected that activity; and (3) a causal connection between the activity and the

defendant's action. Bailey v. Wheeler, 843 F.3d 473, 480 (11th Cir. 2016).

However, where the alleged retaliation consists of defamatory comments by a public official, most federal courts have narrowly construed the right to sue for retaliation under § 1983. "[I]n the absence of a threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will imminently follow, such speech does not adversely affect a citizen's First Amendment rights, even if defamatory." Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000); see X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 72 (2d Cir. 1999) (holding that, in the absence of threats, intimidation, or coercion, legislators' "disparaging, accusatory, or untrue statements" failed to state a claim); Colson v. Grohman, 174 F.3d 498, 512 (5th Cir. 1999) ("[A]ll harms that, while they may chill speech, are not actionable under our First Amendment retaliation jurisprudence."); Penthouse Int'l Ltd. v. Meese, 939 F.2d 1011, 1015–16 (D.C. Cir. 1991) ("[T]he Supreme Court has never found a government abridgment of First Amendment rights in the absence of some actual or threatened imposition of governmental power or sanction."); R.C. Maxwell Co. v. Borough of New Hope, 735 F.2d 85, 89 (3d Cir. 1984) (finding no claim because

letters encouraged plaintiff to terminate lease, but did not threaten, intimidate, or coerce); Hammerhead Enters., Inc. v. Brezenoff, 707 F.2d 33, 38-39 (2d Cir. 1983) (concluding that retaliation must "reasonably be interpreted as intimating that some form of punishment or adverse regulatory action will follow"); contra Tierney v. Vahle, 304 F.3d 734, 740 (7th Cir. 2002) (stating in dicta that "defamation inflicts sufficient harm on its victim to count as retaliation"). In this case, Plaintiff's retaliation claim must be dismissed because he has failed to allege that Defendant used threats, intimidation, or coercion in response to any activity protected by the First Amendment.

In addition, damage to reputation is not actionable under § 1983 unless it is accompanied by a tangible interest. Paul, 424 U.S. at 701. Plaintiff cannot sidestep this requirement, which is necessary for a claim under the Due Process clause, "by alleging that defamation by a public official occurred in retaliation for the exercise of a First Amendment right." Gini v. Las Vegas Metro. Police Dept., 40 F.3d 1041, 1045 (9th Cir. 1994). As noted above, Plaintiff lacked any tangible property interest in proposed House Resolution 96. See supra pp. 16-17, 20-21.

Accordingly Plaintiff has failed to state a valid § 1983 claim for retaliation.

D. <u>Qualified Immunity</u>

"Qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1193-94 (11th Cir. 2002) (internal quotations omitted) (quoting <u>Thomas v. Roberts</u>, 261 F.3d 1160, 1170 (11th Cir. 2001). The official must have been "acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." <u>Id.</u> at 1194 (quotations omitted) (quoting <u>Courson v. McMillian</u>, 939 F.2d 1479, 1487 (11th Cir. 1991)). However, an official is not entitled to immunity if he violated a constitutional or statutory right that was "clearly established at the time of the challenged conduct." <u>Mikko v. City of Atlanta, Ga.</u>, 857 F.3d 1136, 1144 (11th Cir. 2017) (quotations omitted) (quoting <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 735 (2011)). The requirement that the right be clearly established "does 'not require a case directly on point, but existing precedent must have placed the . . . constitutional

question beyond debate.' " Id. (quoting Ashcroft, 563 U.S. at 741).

There is little doubt that Defendant's comments were made within the scope of his discretionary authority. See Mikko, 857 F.3d at 1144 (recognizing that prosecutors may communicate with other officials about current or potential prosecutions). Also, this Court easily concludes that if Defendant did violate any of Plaintiff's constitutional rights, those rights were not clearly established at the time. This Court has poured over numerous cases and exhaustive treaties looking for any similar case from any federal jurisdiction. Despite those efforts, the Court was unable to locate any existing precedent sufficiently clear to place the unconstitutionality of Defendant's conduct beyond debate. Moreover, Plaintiff has failed to identify any case to fill this void. In this absence, the Court must conclude that Plaintiff's complaint fails to allege constitutional deprivations that were clearly established at the time. As a result, Defendant would be entitled to qualified immunity.[6]

---

[6] Because this Court has determined both that Defendant did not violate Plaintiff's constitutional rights, and that Defendant would be entitled to qualified immunity if he did, the Court will not address Defendant's argument that he is entitled to prosecutorial immunity.

**CONCLUSION**

To some observers, this might seem a harsh result. Plaintiff certainly does present an emotionally compelling case to which this Court is sympathetic. This Court never lost sight of what Plaintiff claims happened in this case: Plaintiff was never compensated for the seven years he spent in prison for convictions that were later vacated. No doubt the natural reaction to Plaintiff's allegations is a feeling that Defendant did something wrong. However, this Court must be guided by law, not emotion. Unfortunately for Plaintiff, our law does not provide a remedy for every wrong, and § 1983 does not provide him with the relief he seeks in this case.

For the reasons set forth above, Defendant's Motion to Dismiss must be **GRANTED**. As a result, Plaintiff's complaint is **DISMISSED**. The Clerk of Court is **DIRECTED** to close this case.

SO ORDERED this _28th_ day of July 2017.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

27